The next case today is Andres Oswaldo Bollat Vasquez et al. versus Chad F. Wolf et al. Appeal number 201554. Attorney Ramkumar. May it please the court, Archie Ramkumar for the government. With the court's permission, I would like to reserve three minutes for rebuttal. You may. The district court abused its discretion by preliminarily enjoining the government from applying the migrant protection protocols to Apoles. First, the district court incorrectly concluded that Apoles demonstrated a likelihood of success on the merits. Second, the district court failed to give serious consideration to either the third or the fourth factors in the preliminary injunction calculus. Turning to the district court's merits analysis, there are two grounds for the preliminary injunction that the district court imposed, both of which are statutory in nature. The government will now address each of those grounds in turn. First, the district court incorrectly concluded that the term arriving in section 1225B2C encompasses only the literal moment in time an alien is moving his or her foot across the border. That conclusion is inconsistent with the plain text of the statute, the Supreme Court's recent decision in Thurisidium, and the Board of Immigration Appeals authoritative and reasonable construction of section 1225B2C in matter of MDCV, a construction that commands Chevron deference. First, starting with the plain text of the statute, Congress specifically included the its brief, it is implausible that Congress specifically included that phrase and then simultaneously in the same statutory provision intended to make it functionally impossible for the Department of Homeland Security to exercise that statutory authority. Second, the district court's holding on this issue has been repudiated by Thurisidium. In particular, on page 14 of the addendum, the district court alluded to what it believed was a long-standing distinction in immigration law based solely on physical presence. And importantly, the district court specifically invoked Zadvydas v. Davis. The district court then, on page 15 of the addendum, imported that purported distinction into its statutory analysis. But in Thurisidium, and this is 140 Supreme Court in 1982, the Supreme Court specifically concluded that aliens detained shortly after unlawful entry, like the affiliates in this case, have... I'm missing the sound. I'm sorry, Judge. It sounds like we've gone mute with the counsel. I wonder if counsel can hear me. I can hear you. Okay. So we lost you for about 10 seconds. If you could go back and repeat some of what you've said. I apologize. Can everyone hear me now? Yes. Yes. So the point I was making is simply that on page 14 of the addendum, the district court specifically invoked Zadvydas v. Davis to support what it believed was a long-standing in immigration law based solely on physical presence. But in Thurisidium, the Supreme Court specifically and emphatically rejected any purported distinction based on physical presence. Lost you again. I'm sorry. We're losing you again, counsel. I'm going to try to log out and log back in and see if that solves the problem. We hear you now. It's fine now. It's when you mean... Stay with us, Judge. Stay with us for a second. Judge, is that what you'd like him to do? Do you want to pause while he logs out or do you want to just keep going? I would try keeping going, but if it happens once more, then I guess we have to try something else. Yes, Judge. If you could continue, sir. I guess not. I think he's still having trouble. Yeah, let's try the alternate. Okay. If IT would please pause the YouTube stream. So, attorney, I think you have about four minutes left or so. If you could continue, that would be great. I'm sorry. I apologize. You have about six minutes left. How many? About six minutes left. Yes. Counsel, at some point, I want to cover the issues dealing with the Administrative Procedure Act. Understood, Your Honor. Understood, Your Honor. Before you get to that, could you finish your distinction of Zavidas, please? Certainly, Your Honor. So, just going back to page 14 of the addendum, so the district court specifically invoked Zavidas v. Davis, a Supreme Court case concerning constitutional rights, and then from that decision defined a long-standing distinction based solely on physical presence. But in Thurisidium, and again, this is 140 Supreme Court of 1982, the Supreme Court made it unequivocally clear that aliens detained shortly after unlawful entry have not affected an entry within the meaning of Zavidas. And indeed, in Thurisidium, the respondent who was apprehended 25 yards north of the border was apprehended in the very act of attempting to enter the country. And Appellees cite and allude to the same long-standing distinction on pages 25 to 26 of their brief. And in view of Thurisidium, that long-standing distinction is no longer valid. And again, the district court specifically imported that distinction into its statutory analysis of section 1225. Are we allowed to look to the border crossing cases in our interpretation of whether he was arriving? So are you asking your honor about the BIA's decision in matter of MDCV? No, I'm thinking about, you know, there's a lot of cases involving whether the searches were proper because it was done without a warrant and the Supreme Court has held even in the tensions 150 miles after they crossed the border as being still border crossings. So your honor, those cases might provide some helpful background, but ultimately the government's view is matter of MDCV is the most relevant case because it interprets the precise statute at issue and importantly addresses the very issue that the district court promised the preliminary injunction on, which is whether an alien is still arriving on land after he or she is apprehended near the border or just inside the border. And that decision commands Chevron deference as this court has repeatedly reaffirmed. And in matter of MDCV, the Board of Immigration Appeals drew on the parallels between section 1225A1, which defines applicants for admission and section 1225B2C. Both statutory provisions include the phrase whether or not at a designated port of arrival and therefore the BIA specifically concluded that aliens apprehended near the border or just inside the border after illegally crossing are arriving on land for purposes of section 1225B2C. Here on page 61 of the addendum, the district court observed that there is no dispute that the appellees were apprehended very soon after illegally crossing the border. So the government's position is that the facts of this case are substantially similar to the facts at issue in matter of MDCV. The district court had a second textual reason for its reading, for its holding, as I recall, in that it found that an alien described in subparagraph A, as that term is used in subparagraph C, does not include aliens to whom paragraph one applies. Yes, Your Honor. And what is, as I understand it, your argument is that, well, paragraph one only applies if the agency should decide to put someone into expedited proceedings? Yes, Your Honor. And the reason for that is that section 1225B1 simply provides a procedure for expedited removal. It has no independent meaning apart from the expedited removal procedure that it prescribes. And that's your only textual argument on this point, as I understand it. So, yes, Your Honor. On this point, the government's view is that the plain text of sections 1225B1 and sections 1225B2A could not include that the appellees here were described in subparagraph A because they were placed in a full, non-expedited removal proceedings. And it's helpful to break this discussion by examining in closer detail section 1225B1. I'm sorry. I'm sorry to interrupt, sir. But I think there's some static on the line again. Judges, was that, did you hear the same static? Yes. Did you want to continue or did you want us to try and do something else? Let's see. Can you speak, sir? Is this better? Yeah, it's. OK, Judge, what I can recommend is, is that we could ask the attorney to keep his video on, but mute his audio and we'll try and reach him on a telephone as a second device, if we could. And that he would just finish speaking while we could, while we could see him. He'd use both devices simultaneously. How much more time does he have? He has a couple of minutes and then, then the other side's going to argue, Judge. And he has some rebuttal time as well. At some point, I want to hear something about the Administrative Procedures Act. Yes, Judge. Attorney Ramkumar, is it OK if I, if I try and call you on the number that you had given me? Yes, that's fine. OK, you should mute your, you should mute the audio on your computer. OK? Thank you. Attorney Ramkumar, are you on the phone line with us? Good morning. Can everyone hear me? Yes. Yes. You can, if IT could restart the audio stream and confirm. You may begin, Attorney Ramkumar. So, I want to briefly address Judge Kayada's point and then move to the Administrative Procedures Act with the permission of the court. So, piggybacking on what I was saying before we were last disconnected, there is no dispute that the appellees were placed in full, not expedited removal proceedings, and thus, they're described in subparagraph A. So, the district court's conclusion can only be correct if Section 1225B2B2 is applicable, that is, Section 1225B1 applies to appellees. But as the BIA explained in matter of ERM and LRM, Section 1225B2B2 has a very limited purpose. It simply clarifies that aliens who are actually placed in expedited removal proceedings are not entitled to full removal proceedings. You seem, if I'm following your argument correctly, you seem to be saying that we should read B2 as saying to whom paragraph one has been applied rather than as it reads textually to whom paragraph one applies. So, the government would disagree with that, Your Honor. And again, the reason for that stems from what Section 1225B1 is. It is simply a procedure that DHS can place certain applicants for admission in, in an exercise of its prosecutorial discretion. And I would also point this court to the Supreme Court's decision in Jennings, which describes Section 1225B1 in precisely this manner. So, in Jennings, the Supreme Court noted that aliens who are covered by Section 1225B1 are ordered removed without further hearing or review unless they are referred for and pass a credible hearing. Aliens covered by Section 1225B2A, by contrast, are subject to a different process, one that includes a hearing before an immigration judge. There is no dispute that the appellees were entitled to and avail themselves of the different process attended with Section 1225B2A. So, they are not covered by Section 1225B1 because they were not placed in expedited removal proceedings. And I want to circle back again to the limited purpose of Section 1225B1. Before you move to that, and we're going to get to the administrative procedures, but you're saying that if someone crosses the border who is clearly a fraudster, that Congress intended to give you discretion not to place them in expedited procedures. So, Your Honor, that's exactly what the BIA held in matter at ERM and LRM. And again, it reached that conclusion based on the statutory structure, which is that there is no indication that Congress intended to abrogate the longstanding discretion DHS has to place aliens inadmissible on a variety of different grounds in full removal proceedings. And that is precisely why the fact that the appellees were found inadmissible due to lack of valid entry documents is not a differentiating feature. Because the respondent in matter of ERM and LRM was found respondent on the exact same ground, and yet the BIA specifically sanctioned DHS's ability to place that alien into full, not expedited removal proceedings. I know that my time is running short. I want to briefly address the APA. So, as I understand it, appellees raised three alternative grounds for affirmance under the APA. And just to be clear, none of these claims form the basis for the preliminary injunction below. The government's position is this court shouldn't reach any of those issues in the first instance. But if it chooses to do so, the APA provides no basis to affirm the preliminary injunction below. First, MPP is a general statement of policy that did not need to undergo notice and comment because it simply confers prosecutorial discretion on agents to make case-by-case determinations. Second, with respect to appellee's challenge based on non-refoulement obligations, the relevant treaty obligations are not self-executing. And accordingly, there is no cause of action for appellees to challenge the applicability of these procedures. This court noted that in the in-ray request from the United Kingdom case, that the APA cannot be used as an end-run around the principle that non-self-executing treaty obligations are not enforceable. And then third and finally, appellees make a general arbitrary and capricious claim. But as the government demonstrated in its brief and as the record supports, MPP is not arbitrary and capricious. It has been effective in achieving its aims. It has realigned incentives and restored integrity to the immigration system and ensured that asylum seekers have meritorious claims at their claims court. On the non-refoulement, I don't understand the other side's argument to be that they're trying to enforce the treaty. Rather, it seems to say that under the MPP, your client has promulgated effectively some rules or something of substance. And so, therefore, that should at least trigger the possibility of judicial review or need to follow the APA. Your Honor, I would just come back to what I said earlier, which is the treaty obligations that they have a claim on are the Convention Against Torture and the Refugee Convention. And neither of those treaty obligations are self-executing. But they're not bringing a claim under the treaties. I understand, Your Honor, but that brings me to my second point, which is in the in-ray request from the United Kingdom case, and that's 684F3-1, this court noted that when the treaty obligations are not self-executing, the APA cannot be used to challenge those same treaty obligations. So, it was incumbent upon appellees to point to a domestic statute that enforces the relevant treaty obligations, and they have not done so here. As the government demonstrated in its brief, Section 1231 is inapplicable here because it deals with removal, not contiguous territory return. And even if Section 1231 were applicable, Section 1231H makes clear that nothing in this provision shall be construed as giving any alien a procedural or substantive right. And furthermore, Section 1231B3A makes clear that the Executive Branch has discretion in fashioning procedures. It's ultimately the determination of the Attorney General as to whether or not an alien's life or freedom would be threatened if removed to a country. But why does that help you? I mean, agencies have all sorts of discretion in all sorts of areas, but when they then exercise that discretion to promulgate a rule which has a final effect on a person, we generally look to the APA to see if they've done it properly. So, Judge Cayetano, I would then point to the last part of my answer, which is their claim that the non-refelment procedures are arbitrary and capricious is comparative. They're comparing the procedures used in NPP to the procedures outlined in removal proceedings in Section 1231 and that of the credible fear process as well. And the government's point is that is not an accurate point of comparison because removal proceedings are fundamentally different. And because Section 1225B2C does not constrain the agency in fashioning non-refelment procedures, there is no basis to conclude that the procedures it did adopt here were arbitrary and capricious, given the unique context presented by continuous territory return. But again, I want to return to my first point, which is this was not the basis for the preliminary injunction that the district court imposed. If the panel has no further questions, I would like to respectfully request that the court vacate the preliminary injunction and reserve what time I have remaining for rebuttal. Thank you. Thank you. Attorney Ramkumar, when you mute your... Don't disconnect on the telephone. Please do mute your computer as much as possible so that there's no echo. And we will ask you to mute your video on your device and we will hear from other counsel, Attorney Siegel. Good morning. May it please the court, Matthew Siegel for the appellees. Good morning, Mr. Siegel. I would like you to start maybe, if you don't mind, covering the issue of the Administrative Procedures Act. What is your response to the government? Well, we have a few responses, Your Honor. The first is that one of the things that makes this arbitrary and capricious under the Administrative Procedures Act is that it is guaranteed to violate the very purposes that the government announced when it articulated this program. So a core purpose as articulated when the MPP began was to ensure not just that fraudulent asylum seekers would be put away, but that bona fide asylum seekers would be welcomed. And this is a policy, including by not asking about fear at the moment of returning to Mexico, that is guaranteed to send away people who are bona fide asylum seekers. It is, in fact, an in absentia removal program. The purpose here, what the government is actually doing, is giving people who are subject, to whom expletive removal applies, that's the B1, B2 argument, giving them full removal proceedings for the purpose of making sure that those full removal proceedings never happen, because they send them to a place where they are hunted, persecuted by gangs who intend them harm. And as a consequence of that procedure, what has happened is that, according to the government's own data, of which this court may take notice, 86% of the removals that have occurred under this program have been in absentia. So this is a program that, and there's no reason to believe, the government has provided no way to know, that the people who are being ordered removed in absentia are the fraudulent asylum seekers as opposed to the bona fide ones. And that's because they don't care. So that is what makes this a violation of the APA. A second thing that makes it a violation of the APA is that there are regulations that govern this case. The government is purporting to do something by memo here, including the muster document that was supplied to us in the district court, that for more than 20 years had been swearly and deliberately foreclosed by law. And that's the forcible return to Mexico of people who have crossed into the United States. And I want to be very clear about this because it relates both to the B-1, B-2 argument and the government's characterization of thoracic jam. When Congress enacted 1225B, it said that the, it created an expedited removal proceeding for those without papers, a group that Congress understood to include bona fide asylum seekers. And it created for other non-citizens a separate provision that included the possibility of contiguous return for those who are arriving by land from contiguous territory. And that is why, as Judge Kayada pointed out, it is no accident that the plain language of 1225B forecloses the application of the MPP here because what it says is that when the expedited removal provision applies, not has been applied. And we can see that in the overall structure of 1225B, which is, it refers to other aliens, that is to say, not the B-1 aliens. And in Jennings itself, the Supreme Court of the United States says that everyone falls into one of two categories, B-1 or B-2. Now, if the government seems to object to that characterization, and the government has a pending cert petition in the other MPP case, and if it doesn't like what the Supreme Court said in Jennings, it can certainly try to take that up with the Supreme Court. But that is what the Supreme Court said. On the APA point that you were asked about, could you explain how that works procedurally? Because the district court did not rely on the APA arguments. It didn't reach them. So, suppose in a hypothetical world, we were to disagree with the grounds that the district court did rely on, but find that there's some possible merit on the APA claim. I don't think we can enter our own injunction. Wouldn't we have to vacate the existing injunction, but send it back for consideration of this alternative grounds? That's a fair question, Your Honor. We would say that because none of the things I mentioned in response to Judge Tarweya's question are contested in this case. I'm citing undisputed aspects of the record, as well as the government's own statistics, that you could affirm on that basis. But certainly, it would be permissible to just remand in the instance that we lose on everything else, and let the district court decide the APA matter in the first instance. Have you got any authority? Is there any precedent where a circuit court of appeals has found an injunction is not justified by the only grounds cited by the district court, but an alternative grounds could justify, and in fact does justify, and therefore upholds the injunction? I think we've cited some in the brief, Your Honor. I'm not sure that there's a case where, and I hope this isn't such a case, where the court thoroughly disagrees with everything else that the district court said. So maybe I should take a crack at persuading you, Your Honor, that the district court actually got some things right, because there's a connection between the APA argument, the notion that the muster document that was supplied to us, and it's appearing at JA 248 or 249, is a derogation of not only the statute, but of the government's own regulations, and that creates a separate APA issue. So let me take a crack at the notion of his arriving, because I think that this is a really crucial issue. First of all, on the statute, it is the government's litigation position that is arriving, places no temporal or geographic limitation on who is subject to the MPP, but that is not the government's position in its muster document at footnote 2 of JA 249. It is not the BIA's position. The BIA said that there is a temporal or geographic limitation. And it wasn't the view of the Department of Homeland Security when it wrote in 2004 in the Federal Register on the southern land border with Mexico, those aliens who are apprehended who are not Mexican nationals cannot be returned to Mexico. So the statute does place a temporal or geographic limitation. And if the court has any concerns about that, and about what Therocigium said, I want to be very clear about what happened in Therocigium. Although the Supreme Court said that for due process purposes, someone who has recently crossed the border is not entitled to due process rights. It was undisputed in that case that the actual alien in that case who was just yards from the border was not an alien who is arriving for purposes of 1225B. At pages 19... at 1964 and 1965 of the court's opinion, and at page 17 of the government's brief, you can see that the court held and that the government had conceded that Therocigium himself was subject to expedited removal because he was present in the United States. Could you be factual on this? Are you really saying that the statute only applies  when someone has one foot in Mexico and one foot in the United States? I think that there could be, Your Honor, a sort of constructive interdiction. So as government's counsel said during this very argument, Therocigium was himself interdicted and observed in the act of attempting to enter. So that is certainly something that's available to the court. But it's not the situation here. And more than that, Your Honor, to the extent this court is struggling with this, we are struggling with this, that just goes to show why it was so important that the INS did as it was commanded to do by Congress and promulgate regulations struggling with this very question. And it is inconceivable that they chose to define arriving alien for the purposes of all instances of arriving except the statute at issue here. And it is inconceivable that they issued a regulation, 235.3d, for any purpose aside from narrowing its contiguous return authority to people at the ports of entry, which is the sole thing. I'm sorry. I have to ask you why the border crossing cases, which the Supreme Court has held that the Fourth Amendment doesn't apply, the people that they apprehend sometimes hundreds of miles after they cross the border and they apply the border crossing cases, why doesn't that at least inform us as to what is considered to be arriving? That is a fair question, Your Honor, but the answer is in Thuracidium, which says that for due process purposes, my clients may well be out of luck. But that does not control the question of what the term arriving means, both in the statute in 1225b-2c and in the regulations. And this Court has five minutes remaining. I'm sorry to interrupt you, but Judge Kayada brings what is in all of our minds, and in fact I think has to stay somewhere. Does he have to be or she have to be apprehended with one foot in Mexico and one in the United States to be arriving? That seems to be not very logical to be quite honest with you. Well, so, Your Honor, I think the advantage of the rule that we're describing is that it is administrable. And that was exactly the conclusion that we came to. We have to have a bright-line rule on something like this. How many feet? One foot after? Two feet after? Ten feet after? A hundred miles after? So, just in the interest of time, I'm going to assume that I'm not going to be able to persuade you on the point about what the statute means. But just the question that you're asking me, Your Honor, is precisely the one that the agency itself struggled with. It said it extensively considered this. And precisely for the practical reasons that you are articulating, Your Honor, the agency decided that it was going to define arriving not for one purpose, but for every purpose, for every instance in the statute. That's what the residuum stands for. That's what this court's decision stands for. For every instance of arriving, it means at a port of entry. Precisely because the agency was not interested in trying to figure out who had, in fact, been here for 24 hours. I just want to say one thing about this. The issue in this case, the other thing is that the question that you're asking, Your Honor, doesn't have to be resolved in this case. Because in this case, the government applied a 96-hour rule that it told us about in supplemental briefing. And the question for the court is simply whether that rule is consistent with the statute and with the regulations, which it manifestly isn't. And that rule did not come up in the BIA. The BIA has not said it's an acceptable rule. And that's all that matters here. So would you consider arriving at a port of entry would qualify as arriving by land? Yes, Your Honor. We actually agree with the government's muster document at this point, which is that arriving, is arriving by land, refers to both a geographic limitation and a by land limitation. What about the parenthetical that follows that, that says whether or not at a designated port of arrival, you're in effect saying the muster document reads that out of the statute? Well, I actually, I mean, I actually think that the government knew of 235.3d when it issued this muster document. 235.3d was a regulation that, precisely because Your Honor is correct, that the statute encompasses the possibility of whether or not a port of entry, the sole conceivable purpose of the 235.3d is to limit the application to just at ports of entry. And an analogy I would draw, Your Honor, is one that is the analysis that the Supreme Court did in Jennings at page 844 of that decision where in deciding that the parole statute, that's 1182, in deciding that the parole statute was the sole exception to the custody commands of 1225b, this very statute, it said that that was the sole exception. That by saying that the government may parole someone for humanitarian reasons, the canon of negative implication commanded that that meant it couldn't be paroled for any other reason. So getting back to your What I'm saying here is that because the statute says whether or not a port of entry, when the regulation says at ports of entry, the only thing it could be doing is limiting the government's authority to that scenario. I just want to if I might, give a better answer, Your Honor, to your question about affirming on alternate grounds. The decision I would point to is Lang Law versus Abington Housing Authority, which I believe is at 207 F 3rd 43. Please file a 10J letter within 10 days. Certainly, Your Honor. Is it 10J or 28J? I forget. Whatever number applies. We will attach the right number and the right letter. I commit to that, Your Honor. One other thing I would say about these regulations. There is a suggestion in the government's brief that the regulation is silent as to border crossers, 235.3D. That is not correct. The first sentence of 235.3D says the service will assume custody of any alien subject to detention under paragraph B or C. Paragraph B and C That's time. I apologize, Your Honor. I may just finish this one thought. Yes. Paragraph B of 235.3B refers to both arriving aliens and to people who are present. When the second sentence of 235.3D refers to only people who are arriving, the sole conceivable purpose there is to narrow the application of the contiguous return authority to that scenario. We would ask that the preliminary injunction be upheld. We thank the court for its time. Thank you. I believe the government reserves some time. Yes, Judge. Attorney Siegel, you can mute your device and Attorney Ramkumar, if you could unmute your video and continue to proceed on the telephone. On rebuttal, I would just like to make three brief points before concluding. First, I want to address the Muster Guiding Principles document, which the closing counsel discussed in detail, and I just want to be very clear that document simply provides context on how Border Patrol agents effectuate the authority in Section 1225. Can you put the phone closer to your mouth, please? Yes. I'm sorry. Is this better? Yes. So, the Muster Guiding Principles document is not a legal rule. It is simply an operational document that gives context to how DHS effectuates the statutory authority in Section 1225 B2C. And importantly, for purposes of this appeal, there is no inconsistency between the Muster Guiding Principles and the BIA's decision in matter of MDCV. On page 249 of the joint appendix in footnote 2, the agency specifically noted that aliens apprehended reasonably proximate to the border are arriving on land. And again, that explanation aligns with precisely what the BIA concluded in matter of MDCV. Second, I want to briefly go back to the second textual ground for the preliminary injunction below and just circle back to Jennings. And again, I just want to be perfectly clear. The Supreme Court described Sections 1225 B1 and B2A in precisely the manner that the government is advocating for here. Namely, aliens covered by Section 1225 B1 are normally ordered removed without further hearing or review unless they are referred for and passed a credible fear interview. In other words, aliens covered by Section 1225 B1 are subject to the expedited removal procedure. Here, however, the appellees were not placed in expedited removal proceedings, so they are not covered by But doesn't that paragraph apply to them by giving you the authority to put them into an expedited proceeding if you wanted to do so? So, let me put a sharp point on it. A given individual, no papers, he says, your client says to him, we're going to put you in expedited proceedings. And he says, well, B1, Paragraph 1 doesn't apply to me. Wouldn't you say, yes, it does, so we can put you in proceedings? No, Your Honor. And the reason for that is someone who lacks valid entry documentation is not automatically someone who Section 1225 B1 applies to. And this goes back to the overlap between the first clause of Section 1225 B1 A1 and Section 1225 B2 A. So, aliens who lack proper documentation are also applicants for admission who are not clearly and beyond a doubt entitled to be admitted. So, they also fit the description of aliens in Section 1225 B2 A. And the Ninth Circuit Motions Panel in Innovation 1 seized on this very point to conclude that Section 1225 B1 does not apply to aliens who could have been placed in expedited removal, but were not. Third and finally, with the Court's permission, I would like to make one brief point before wrapping up. Go ahead. Brief. Yes, Your Honor. Opposing counsel extensively discussed 8 CFR 235.3. I just want to be clear that was not the basis for the preliminary injunction below. And if this Court were to reach that issue, it would again have to reach another issue the District Court did not rule on. And as this Court observed in Ryan v. Ice, without the benefit of the District Court's insights, it is prudent appellate practice to refrain from deciding those issues. So, for those reasons and the reasons articulated in our brief, we ask this Court to vacate the preliminary injunction below. Well, would we remand to have the Court tell us whether they believe these matters, which I believe were brought before the Court but not decided, should be decided first by the trial court? Yes, Your Honor. But in doing so, this Court would also, if it accepted the government's arguments on the statutory issues, would vacate the preliminary injunction and then remand. Even if we believe that the issues that we remand for seem to have validity? So, the government's view is that they do not, Your Honor. We know your view, but I'm telling you our view, assuming it was our view. So, I would just go back to my previous answer, which again, this Court obviously has the power to affirm on alternative grounds, but as a general prudential matter refrains from doing so, particularly when the issues raise complex legal and factual issues. Is that correct? Is the practical difference here simply this, that for these given individuals, if we were to vacate and remand, your client could quickly round them up and send them to that place in Mexico where these things happened to them, but if we were to simply remand for consideration of the alternative grounds, they could not be rounded up in the meantime? So, I believe that would be correct, but again, I'm not aware of a scenario in which this Court could conclude that the district court erred in holding that the government should be enjoined based on the statutory grounds and then nonetheless left the preliminary injunction in place for further consideration of other issues that it specifically declined to address. And so, for those reasons, we would ask this Court to vacate the preliminary injunction below. And, do you know, does your client propose to propose, if there is this hiatus, if we were to accept your arguments on the grounds that the district court relied upon but at the same time think that the district court should reach the APA grounds because there might well be merit to those, do I understand you to be implying that your client, in fact, has some plan or intention to exploit that hiatus to seize the plaintiffs and send them to Mexico? So, no, Your Honor. I have not spoken with my client about this possibility so I don't want to make any definitive representations one way or another. But I can say that I'm willing to discuss this issue with our client and get back to the Court on that point if the Court believes it would be helpful. I think that our Rule 28J would allow you to do that. Okay, understood, Your Honor. I will submit a Rule 28J letter addressing the scenario you just posed to me. Thank you. Thank you very much. That concludes argument in this case. Attorney Ram Kumar and Attorney Siegel, you can disconnect from the hearing at this time.